UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LAZARUS,

               Plaintiff,                                  Case No. 1:07-cv-524

v.                                                 Hon. Wendell A. Miles

SUZANNE EISEN, et al.,

               Defendants.
_____/

## OPINION

      This matter is before the Court on Defendant Correctional Medical Services, Inc.'s Motion for Summary Judgment Pursuant to 42 U.S.C. § 1997e, (dkt. #26), and Defendants Smith, Norwood, Gilkey, Kemp, Patterson, and Chapin's Motion for Summary Judgment due to Lack of Exhaustion, (dkt. #33). For the reasons discussed herein, Defendants' motions are both **granted**.

## BACKGROUND

      The following allegations are contained in Plaintiff's complaint. On October 1, 2004, Plaintiff (who was then housed at the Standish Correctional Facility) began participating in the Secure Status Out Patient Mental Health Treatment Program (SSOPT). On October 6, 2004, Plaintiff "had a heated argument with psych nurse Bauer." As a result, Plaintiff was issued a misconduct violation and placed in administrative segregation. While in administrative segregation, Plaintiff began experiencing "more frequent and increasingly more morbid" hallucinations. Plaintiff reported this to several individuals (none of whom are defendants in this matter), but was "deliberately denied adequate mental

health treatment."  Plaintiff asserts that prison officials continued to house him in administrative segregation "as a form of punishment and retaliation."

Plaintiff was released from administrative segregation in May 2005.  In June 2005, Plaintiff "hung [himself] and overdosed on prescription medication," yet "received no help."  In August 2005, Plaintiff was allowed to resume participation in the SSOPT program.  Soon thereafter, however, Plaintiff was "charged with possessing dangerous contraband" and returned to segregation.  Following this incident, Plaintiff "overdosed again," but continued to be housed in administrative segregation and was denied adequate treatment for his mental impairments.  On November 9, 2005, Plaintiff "overdosed again," but "still [he] received no help."

On December 12, 2005, Plaintiff was transferred to the Ionia Correctional Facility (ICF) to participate in the SSOPT program.  After arriving at ICF, Defendant Eisen told Plaintiff that he had been scheduled to be housed in a "residential treatment program," but was instead going to be placed in administrative segregation because of an altercation Plaintiff was involved in upon his arrival at ICF. On January 12, 2006, Plaintiff "overdosed again" and set his cell "on fire."  Plaintiff was transferred to Foote Hospital, where he was treated for six days.  Upon his return to ICF, Defendant Eisen told Plaintiff, "you don't have shit coming from me ever so don't ask."

Following this incident, Plaintiff "wrote several grievances for denial of adequate mental health treatment."  Defendant Eisen subsequently interviewed Plaintiff in an attempt to persuade him to sign off on his grievances.  When Plaintiff refused to do so, Defendant Eisen screamed at Plaintiff and charged him with a misconduct violation for "sexual misconduct."  On April 17, 2006, Plaintiff "tore [his] cell up during a black-out, paranormal experience, and overdosed."  Plaintiff was placed on

"observation," during which time Defendant Eisen visited Plaintiff, informing him "I told you not to fuck with me."

Soon thereafter, Plaintiff experienced "a powerful visual and audio hallucination," at which point he asked to speak with his psychiatrist "before it got too severe." Plaintiff's psychiatrist, claiming that Plaintiff "never had hallucinations," refused to visit with Plaintiff. Plaintiff later made several attempts to "injure" himself, but "staff" nonetheless "refused to send [Plaintiff] to the hospital." Plaintiff then "tore the light off the ceiling, ingested glass and cut [his] arm up." As a result, Plaintiff "spent 14 days restrained on a bed with no clothes and was forced to urinate and defecate on [himself] with no opportunity to cleanse [himself]."

On four occasions between April 24, 2007, and May 19, 2007, Defendants Patterson and "CMS Nurse" Kemp withheld prescribed medications "as punishment." Defendant Gilkey witnessed one of these occurrences and "failed to intervene." Plaintiff also asserts that "in April and May 2007," Defendants Gilkey and Patterson physically assaulted him. Defendant Badger subsequently removed "records from confidential files" to "cover up" these physical assaults.

The "only mental health contact" Plaintiff is currently provided is "cell-side, 3-5 minutes, once a week." Defendant Eisen instructed Plaintiff that he "must go 6 months ticket free prior to any placement in formal treatment programs." Plaintiff is "not getting any real help because [his] psych[iatrist] has many problems with [him], stemming from [his] illness." Plaintiff has requested "a new case monitor," without success. Plaintiff's current case monitor, Defendant Eisen, is "biased and unwilling to help." Plaintiff asserts that his "mental health is clearly being deliberately neglected and being used as punishment which is extremely cruel." Plaintiff claims that Defendants Smith, Norwood,

and Gilkey "are denying access to participate in SSOPT program contrary to" his psychologist's "direction" and Plaintiff's requests.

Plaintiff initiated this action on May 31, 2007, against numerous individuals and entities. Plaintiff alleges that Defendants violated his Fourteenth Amendment right to due process and equal protection of the laws, as well as his Eighth Amendment right not to be subjected to cruel and unusual punishment.   Plaintiff also asserts that Defendants violated his rights under the Americans with Disabilities Act and the Rehabilitation Act.  The Court has already dismissed Plaintiff's claims against several Defendants.  (Dkt. #10-11).  The remaining defendants against whom service has been effected now move for summary judgment on the grounds that Plaintiff has failed to properly exhaust his claims against them.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party

opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

# ANALYSIS

## I.        Exhaustion Standard

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their complaints.  *See Jones v. Bock*, 127 S.Ct. 910, 921 (2007).  Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.  *Id.*  With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 126 S.Ct. 2378, 2386-87 (2006).  In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is
> required by the PLRA to 'properly exhaust.'  The level of detail
> necessary in a grievance to comply with the grievance procedures will
> vary from system to system and claim to claim, but it is the prison's
> requirements, and not the PLRA, that define the boundaries of proper
> exhaustion.

*Bock*, 127 S.Ct. at 922-23.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus.  *See Woodford,* 126 S.Ct. at 2384.  In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999).  To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies."  *Id.* at 848 (citation omitted).

In the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 126 S.Ct. at 2387.  To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,*544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance.  *See Johnson v. Meadows,* 418 F.3 d 1152, 1159 (11th Cir.2005), *cert. denied,*126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations").  Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the Federal Constitution or the intended purposes of § 1997e(a).  *See Spruill,* 372 F.3d at 232.

Defendants have submitted copies of twelve (12) different grievances that Plaintiff filed between January and July 2007.  Plaintiff has neither argued nor presented evidence that he pursued any grievances in addition to the twelve grievances on which Defendants rely.  The Court shall, therefore,

examine these grievances to determine which (if any) claims in Plaintiff's complaint have been properly exhausted.

> A.      Grievances Not Exhausted at the Time the Present Action was Filed

As the Sixth Circuit has recognized, the "plain language of the [PLRA] makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). Accordingly, a prisoner plaintiff must pursue all levels of the administrative procedure *before* filing an action in federal court and "may not exhaust administrative remedies during the pendency of the federal suit." *See Freeman*, 196 F.3d at 645 ("While we recognize that plaintiff made some attempt to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed"); *Poor v. Grayson*, 46 Fed. Appx. 825, 826 (6th Cir., Sept. 17, 2002); *Crump v. Perttu*, 2008 WL 680402 at *5 (W.D. Mich., Mar. 7, 2008). In short, a prisoner plaintiff must complete the administrative grievance process before initiating an action in federal court. *See Freeman*, 196 F.3d at 645; *Grayson*, 46 Fed. Appx. at 826; *Crump*, 2008 WL 680402 at *5.

Of the twelve grievances at issue in this matter, Plaintiff pursued only six of them to completion before filing the current action.[1] A review of the following grievances reveals that the administrative process was still ongoing as of May 31, 2007, when the Court received Plaintiff's complaint for filing:

1.      ICF-07-03-0512-12E1
2.      ICF-07-05-863-28a
3.      ICF-07-05-0862-17I
4.      ICF-07-05-0861-26a

---

[1] Plaintiff signed his complaint on May 22, 2007, and it was received for filing by the Court on May 31, 2007.

     5.     ICF-07-05-864-15b
     6.     ICF-07-07-1287-26a

(Dkt. #26, Exhibit B).

     Accordingly, the Court finds that Plaintiff has failed to exhaust any of the claims asserted in these particular grievances. The Court notes that with respect to two additional grievances (ICF-07-02-0307-17c and ICF-07-03-515-27b) it is not clear whether they were fully exhausted prior to the initiation of this matter.

     The Step III responses to these two grievances are both dated May 23, 2007. (Dkt. #26, Exhibit B). Because this date falls after the date on which Plaintiff signed his complaint, it might appear that Plaintiff initiated the present action before the administrative process regarding these two grievances was properly completed. Defendants, however, have submitted no evidence establishing precisely when Plaintiff submitted his complaint to prison officials for mailing. Considering that nine days passed between the date Plaintiff signed his complaint and the date the Court received it for filing, it is quite possible that Plaintiff did not submit his complaint for mailing, thus initiating this matter, until after these two grievances were fully exhausted. Because the burden rests with Defendants to establish that Plaintiff did not properly exhaust his claims, in the absence of any evidence from Defendants on this issue, the Court cannot conclude that Plaintiff failed to properly exhaust the claims in these two grievances.

     For the reasons discussed above, therefore, the Court concludes that Plaintiff has failed to properly exhaust the claims asserted in the six grievances listed above. An examination of the other six grievances at issue in this matter follows immediately below.

B.      Plaintiff's Remaining Grievances

An examination of the remaining six grievances reveals that Plaintiff has not properly exhausted any of the claims asserted in his complaint against the Defendants presently moving for summary judgment.

1.      Grievance SMF-05-01-0166-12b

Plaintiff filed this grievance on January 14, 2005, alleging that "R.N. Bauer" refused to provide him with proper mental health treatment during a January 9, 2005 examination.  Plaintiff pursued this grievance through Step III of the grievance process.  While Plaintiff pursued this grievance through all three steps of the grievance process, this particular incident is not asserted by Plaintiff in his complaint.  Thus, this grievance does not serve to exhaust any of the claims asserted in Plaintiff's complaint.

2.      Grievance SMF-05-08-1611-19d

Plaintiff filed this grievance on August 18, 2005, alleging that several items of his personal property were missing.  Plaintiff did not, however, identify any individuals in his grievance who he considered responsible.  Plaintiff pursued this grievance through Step III of the grievance process.  Again, while Plaintiff pursued this grievance through all three steps of the grievance process, this particular incident is not asserted by Plaintiff in his complaint.  Thus, this grievance does not serve to exhaust any of the claims asserted in Plaintiff's complaint.

3.      Grievance ICF-06-02-0147-12b1

Plaintiff filed this grievance on February 5, 2006, alleging that "Susan Issen"[2] was "deliberately neglecting" his mental health needs.  Plaintiff pursued this grievance through Step III of the grievance process.  As noted above, Plaintiff asserts that after being transferred to ICF on December 12, 2005, Defendant Eisen refused to provide him with appropriate mental health treatment.  Therefore, Plaintiff has properly grieved his claims that from December 12, 2005, through February 5, 2006, Defendant Eisen violated Plaintiff's Eighth Amendment rights by failing to provide him with appropriate mental health treatment.  However, Defendant Eisen has not yet been served and is not a moving party for purposes of the current motions.

4.      Grievance ICF-06-01-0036-12b1

Plaintiff filed this grievance on January 11, 2006, alleging that he was suffering "deliberate neglect of [his] mental illness."  Plaintiff pursued this grievance through Step III of the grievance process.  Plaintiff did not assert this grievance against any particular individual or entity, however, and Defendants assert that unless a grievance expressly identifies a defendant *by name* that grievance fails to properly exhaust any claims therein against that particular defendant.

MDOC policy provides the following directions for completing grievance forms: "The issues shall be stated briefly.  Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *See* Michigan Dep't of Corrections Policy Directive 03.02.130 ¶ T (effective Dec. 19, 2003).  Because Plaintiff did not identify in this grievance any of the

---

[2] In the absence of evidence to the contrary, the Court interprets "Susan Issen" as referring to Defendant Suzanne Eisen.

Defendants presently moving for summary judgment, this grievance cannot serve to exhaust any of Plaintiff's claims against these Defendants.

        5.        Grievance ICF-07-02-0307-17c

Plaintiff filed this grievance on February 8, 2007, alleging that Sgt. Shrood physically assaulted him on February 7, 2007. Plaintiff pursued this matter through all three steps of the grievance process. However, Sgt. Shrood is not a defendant in this action. Moreover, the incident described in this grievance is not asserted by Plaintiff in his complaint. Accordingly, this grievance does not serve to exhaust any of the claims asserted in Plaintiff's complaint.

        6.        Grievance ICF-07-03-515-27b

Plaintiff filed this grievance on March 13, 2007, alleging that Defendant Gilkey was improperly denying him a mattress. While Plaintiff pursued this grievance through all three steps of the grievance process, this particular incident is not asserted by Plaintiff in his complaint. Thus, this grievance does not serve to exhaust any of the claims asserted in Plaintiff's complaint.

## <u>CONCLUSION</u>

For the reasons articulated herein, <u>Defendant Correctional Medical Services, Inc.'s</u> <u>Motion for Summary Judgment Pursuant to 42 U.S.C. § 1997e</u>, (dkt. #26), is **granted**, and <u>Defendants</u> <u>Smith, Norwood, Gilkey, Kemp, Patterson, and Chapin's Motion for Summary Judgment due to Lack</u> <u>of Exhaustion</u>, (dkt. #33), is **granted**.

An Order consistent with this Opinion will enter.


Date: <u>September 30, 2008</u>                                        /s/ Wendell A. Miles
                                                                            WENDELL A. MILES
                                                                            Senior United States District Judge